United States District Court
Southern District of Texas
**ENTERED**
September 13, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| HEALTH FIRST HEALTH PLANS, INC., § § § | |
| Plaintiff. § § | |
| VS. § | CIVIL ACTION NO. 3:20-cv-00226 |
| § § | |
| AMERICAN NATIONAL INSURANCE COMPANY § § § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant American National Insurance Company's Amended Motion to Dismiss ("Motion to Dismiss"). Dkt. 21. After carefully reviewing the exceptional briefing submitted by both parties, analyzing the relevant case law, and hearing oral argument, I recommend that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

Health First Health Plans, Inc. ("Health First") is a health insurance company. In March 2015, Health First, the University of Chicago Medical Center ("Hospital"), and the University of Chicago Physicians Group ("Physicians Group") entered into a letter agreement under which Health First agreed to reimburse the Hospital and the Physicians Group certain amounts for performing a heart transplant on one of its insureds referred to as Doe Patient.

In late November 2017, Doe Patient, who was also a Medicare patient, entered the Hospital for the heart transplant. The transplant took place on February 26, 2018. Sometime later, Health First turned to American National Insurance Company ("American National"), seeking reimbursement for monies Health First paid the Hospital and the Physicians Group for the heart transplant.

Health First contends that American National is required to provide reimbursement by the terms of an HMO Excess Reinsurance Agreement (the "Reinsurance Agreement") entered into between American National and four insureds: Health First; Health First Insurance, Inc.; Health First Government Plans, Inc.; and Health First Commercial Plans, Inc. (collectively, the "Health First Entities"). The Reinsurance Agreement provides that American National will indemnify the Health First Entities for those amounts incurred by Medicare patients during the 2018 calendar year. The Reinsurance Agreement further specifies:

> This is an Agreement solely between [the Health First Entities] and Reinsurer, and it provides no benefits to creditors, Members or health care providers. [The Health First Entities are] responsible for all health care and health care expenses for Members. Reinsurer is not obligated to provide any service or payment, directly or indirectly, to anyone but [the Health First Entities or their] court appointed receiver.

Dkt. 23-2 at 15.

The Reinsurance Agreement contains a $5 million policy limit and a $500,000 deductible per Medicare patient. Health First claims that it is entitled under the Reinsurance Agreement to be reimbursed $1,145,236.33 for monies paid to the Hospital and the Physicians Group for Doe Patient's heart transplant.

To date, American National has refused to reimburse Health First. American National maintains that the transplant claim at issue is not covered under the Reinsurance Agreement since Doe Patient was admitted to the hospital before the Reinsurance Agreement's effective date (i.e., before January 1, 2018).

On July 7, 2020, Health First filed suit against American National. In the live pleading, the Second Amended Complaint, Health First asserts three causes of action: (1) a breach-of-contract claim under the Reinsurance Agreement; (2) a wrongful-denial, delay, and misrepresentation claim under Chapter 541 of the Texas Insurance Code; and (3) a prompt-payment claim under Chapter 542 of the Texas Insurance Code.

American National has moved to dismiss the Chapter 541 and 542 claims under Federal Rule of Civil Procedure 12(b)(6). First, American National avers that Chapters 541 and 542 do not apply to reinsurance agreements like the one at issue in this case. According to American National, Chapters 541 and 542 are consumer-protection statutes solely intended to regulate trade practices in direct-insurance transactions. Next, American National posits that section 493.055 of the Texas Insurance Code precludes extra-contractual claims against a reinsurer. Finally, even if Health First's Chapter 541 allegations applied to reinsurance contracts, American National argues that the Court should still dismiss the Chapter 541 claim because Health First's allegations do not give rise to a bad-faith claim or extra-contractual damages, and Health First has failed to comply with Rule 9(b)'s heightened pleading requirements.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant is entitled to dismissal when the plaintiff fails to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a context-specific inquiry, "requir[ing] the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a Rule 12(b)(6) motion, I must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). I "do not, however, accept as true legal conclusions,

---

[1] American National's Motion to Dismiss also sought to dismiss the entire case under Rule 12(b)(7) for failure to include all necessary parties. I need not decide that issue because the parties have informed me that they have reached an agreement to resolve that issue. *See* Dkt. 31.

3

conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up). Allegations relying on mere speculation are nonactionable, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

At oral argument on the Motion to Dismiss, there was much discussion about whether section 493.055 of the Texas Insurance Code is applicable to Health First's extra-contractual claims against American National. To make sure the record was fully developed, I ordered the parties to submit supplemental briefing on section 493.055. That supplemental briefing has helped me clarify the issues involved and conclude that Health First is prohibited by section 493.055 from maintaining an action against American National under Chapters 541 and 542.

Chapter 493 of the Texas Insurance Code regulates the reinsurance industry. The specific statutory provision at issue here is section 493.055, titled "Limitation on the Rights Against Reinsurer." This section broadly prohibits extra-contractual claims against a reinsurer. It provides, in its entirety, as follows:

> A person does not have a right against a reinsurer that is not specifically stated in:
>
> (1) the reinsurance contract; or
>
> (2) a specific agreement between the reinsurer and the person.

TEX. INS. CODE § 493.055. The plain language of this statute clearly indicates that any cause of action against a reinsurer must be based on the terms of the reinsurance contract or other agreement between the parties.

American National argues that Health First's statutory claims must be dismissed because neither the contract nor the Reinsurance Agreement gives

4

Health First the right to sue its reinsurer, American National, for violations of Chapters 541 and 542. Health First advances three reasons why it believes section 493.055 is inapplicable to the present situation. First, Health First claims that "Chapter 493 does not even apply to the [Reinsurance] Agreement, as the [Reinsurance] Agreement is not true 'reinsurance' issued between two reinsurance companies, but rather direct insurance under which [American National] was insuring Health First's direct loss." Dkt. 29 at 2. Second, Health First argues that, in the event section 493.055 applies, the statute "was intended to prevent the original insured from maintaining a direct action against its insurer's reinsurer; it is not an absolute bar from the insurer's right to bring claims against its reinsurer." *Id.* Third, Health First asserts that Chapters 541 and 542 do not preclude an insurer from bringing a cause of action against its reinsurer. None of those reasons are convincing. I will address them each in turn.

First, Health First argues that section 493.055 does not apply to this dispute because the Reinsurance Agreement is not true "reinsurance" issued between two insurance companies. *See* Dkt. 29 2–3. This argument makes little sense to me. "Reinsurance . . . has been described as the transfer of all or part of one insurer's risk to another insurer, which accepts the risk in exchange for a percentage of the original premium." *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848 (Tex. 2012). "Reinsurance is not regulated because it typically involves the reallocation of risk between two insurance companies rather than a consumer-insurance transaction." *Id.* at 845. In colloquial terms, reinsurance is "insurance for insurance companies." *Hous. Cas. Co. v. Lexington Ins. Co.*, No. CV H-05-1804, 2007 WL 9751933, at *3 (S.D. Tex. June 25, 2007) (quotation omitted).

Health First's current stance that the contractual agreement is not truly a reinsurance agreement is belied by the title of the agreement: "HMO Excess Reinsurance Agreement." Dkt. 23-2 at 3. This wording is printed in a large, bold font at the top of the first page of the Reinsurance Agreement, making it

5

abundantly clear how the parties perceive their relationship. To this end, the Reinsurance Agreement also specifically identifies American National as the "Reinsurer" on the front page. *Id.* But wait, there is more. The language of the Reinsurance Agreement expressly transfers part of Health First's risk of loss for its members' covered expenses to American National for a premium payment. *See id.* at 5–8. That is the exact definition of reinsurance—insurance for an insurance company. And the Reinsurance Agreement contains a "Schedule of Reinsurance," as well as a "Reinsurance Coverage" section, further making is clear that reinsurance is the essence of the agreement between the parties. *Id.* at 5, 8, 12. But most telling of all is the fact that Health First readily admits in the Second Amended Complaint that American National is Health First's reinsurer. *See* Dkt. 19 at 2 ("Health First was reinsured by [American National]."). This judicial admission is binding on Health First, and no matter how hard it tries, Health First cannot escape its reach. *See Zedner v. United States*, 547 U.S. 489, 504 (2006) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." (cleaned up)).

Health First's second argument—that section 493.055 bars claims filed by the *original insured* against its insurer's reinsurer, but not claims filed by an *insurer* against its reinsurer—fares no better. When construing a statute, my "primary objective is to ascertain and give effect to the Legislature's intent." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "A statute's unambiguous language is the surest guide to the Legislature's intent because the Legislature expresses its intent by the words it enacts and declares to be the law." *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018) (cleaned up).

Turning to section 493.055's language, the statute prohibits a "person" from bringing a claim against a reinsurer that is not specifically stated in the reinsurance contract or a specific agreement between the reinsurer and the

6

person. TEX. INS. CODE § 493.055. Although Chapter 493 does not define "person," the Texas Administrative Code, which contains provisions implementing Chapter 493, defines person to include "[a]n individual, corporation, partnership, or other legal entity." 28 TEX. ADMIN. CODE § 7.602(10). This definition of "person" unquestionably includes an entity like Health First. Under the plain language of the statute, Health First is thus prohibited from suing a reinsurer for extra-contractual claims unless a written agreement expressly gives Health First the right to bring such claims.

Health First contends that section 493.055 is nothing more than a direct-action statute prohibiting an original insured from suing a reinsurer. Although section 493.055 unquestionably precludes an original insured from suing a reinsurer, the statute's express language also precludes a reinsured like Health First from suing its reinsurer for extra-contractual claims. The rules of statutory construction require me to presume that the Texas Legislature intentionally and deliberately chose the word "person," and I must give meaning to that word as used in the statute. Had the Texas Legislature intended for section 493.055 only to limit direct actions by an original insured, it could have easily said so. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex. 1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, . . . every word excluded from a statute must also be presumed to have been excluded for a purpose." (citation omitted)).

A number of other states have adopted statutes that also limit the type of claims that can be brought against a reinsurer. But those statutes differ from section 493.055 in one major respect—they include language specifying that only direct actions by an original insured or policy holder are prohibited. By their express wording, those statutes do not apply to a reinsured who wants to bring extra-contractual claims against its reinsurer. For example, Puerto Rico's statute is remarkably similar to the Texas law, with one notable exception:

7

> **The original insured or policyholder or any person other than the ceding insurer**, who enters a claim by virtue of any insured or policyholder's insurance, shall not have any direct right of action against the reinsurer which is not specifically set forth in the reinsurance contract, or in a specific agreement between the reinsurer and such original insured or policyholder.

26 L.P.R.A. § 413 (emphasis added). Similarly, California's law states:

> **The original insured or policyholder** shall not have any rights against the reinsurer which are not specifically set forth in the contract of reinsurance, or in a specific agreement between the reinsurer and the original insured or policyholder.

CAL. INS. CODE § 922.2(c) (emphasis added). And Florida's statute provides as follows:

> **No person, other than the ceding insurer**, has any rights against the reinsurer which are not specifically set forth in the contract of reinsurance or in a specific written, signed agreement between the reinsurer and the person.

FLA. STAT. ANN. 624.610(10) (emphasis added).

It is significant that the Texas Legislature did not choose the language utilized by Puerto Rico, California, and Florida. Instead, Texas lawmakers chose to use the word "person" without limiting the meaning of the term to the original insured, policyholder, or any person other than the ceding insurer.[2] Section 493.055 should be given its plain meaning: extra-contractual claims against reinsurers are barred unless the reinsurance contract or some separate written agreement provides otherwise. I am unaware of any court—state or federal—imposing Chapter 541 or 542 extra-contractual damages upon a reinsurer acting as a reinsurer, and I will not be the first one to do so.

Third and finally, Health First alleges that there is no language in Chapters 541 or 542 that preclude an insurer from bringing a cause of action against its reinsurer. This argument does not move me.

---

[2] A "ceding insurer" is an insurer who passes a portion or all of the risk associated with an insurance policy to another insurer. The term is synonymous with a "reinsured."

8

Chapter 541 prohibits a long list of unfair and deceptive practices in the business of insurance. *See* TEX. INS. CODE § 541.051–061. Under Chapter 541, a prevailing plaintiff may obtain treble damages "on a finding by the trier of fact that the defendant knowingly committed the act complained of." *Id.* § 541.152(b). Chapter 542 prohibits an insurer from engaging in unfair claim settlement practices. *See id.* § 542.003. A plaintiff who prevails under Chapter 542 is entitled to interest on the amount of the claim at the rate of 18 percent a year. *See id.* § 542.060(a). Although it is true that Chapters 541 and 542 do not say anything about reinsurance, that does not automatically mean that Chapters 541 and 542 apply to reinsurers. American National claims that the Texas Legislature's failure to mention reinsurance in Chapters 541 and 542 should be interpreted as excluding reinsurance from the reach of these statutory provisions. But I do not need to go down that road. As noted, section 493.055 is plain and unambiguous. It bars any legal entity (individual, corporation, etc.) from pursuing a claim against a reinsurer that is not specifically stated in the reinsurance contract or a specific agreement between the parties. This language controls, and precludes any extra-contractual claim, whether it be under Chapters 541, 542, or any other state statute.

\*\*\*

In sum, section 493.055 prohibits extra-contractual claims brought against reinsurers unless specifically authorized by a reinsurance contract or a separate written agreement. It does not matter whether the party bringing the claim is an original insured, a policyholder, or a reinsured.

Because I find that section 493.055 disposes of Health First's Chapter 541 and 542 claims, I need not address the other, independent reasons advanced by American National for dismissing such claims.

## CONCLUSION

For the reasons explained above, I recommend that the Motion to Dismiss be **GRANTED**. Health First's claims under Chapters 541 and 542 should be dismissed. Health First's breach-of-contract claim remains.

The parties are ordered to confer and submit, within five days of the District Court adopting this Memorandum and Recommendation, a proposed docket control order to govern the ultimate disposition of this case.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed on this 13th day of September 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE